IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK RAHOI,

                                            OPINION AND ORDER
                    Plaintiff,
                                            06-cv-691-bbc
            v.

DR. SIRIN, DR. HUIBREGSTE, and
DR. BURTON COX, JR., all sued
individually and in their official
capacities,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In this case brought under 42 U.S.C. § 1983, plaintiff Mark Rahoi contends that

defendants Dr. Kerim Sirin, Dr. Charles Huibregtse and Dr. Burton Cox, Jr. violated his

rights under the Eighth Amendment when (1) all three doctors were deliberately indifferent

to his serious medical needs when they failed to arrange for him to receive surgery for his

rotator cuff tear and physical therapy for complications from his spinal cord injuries and (2)

defendants Huibregtse and Cox were deliberately indifferent to his need for prescribed

medication when they failed to insure that the prescriptions were timely renewed.[1]  There

---

[1] In his response brief on summary judgment, plaintiff appears to attempt to raise

1

are three motions to address.  Defendants have moved for summary judgment on plaintiff's claims and have also moved to strike plaintiff's expert testimony.  Plaintiff has filed a motion for clarification regarding his motion to file a surreply on the summary judgment motion. I will address each of these motions separately.

## I. PLAINTIFF'S MOTION FOR CLARIFICATION

Plaintiff has moved for clarification regarding this court's July 17, 2008 order denying his motion to file a surreply brief on the defendant's summary judgment motion.  Plaintiff does not actually ask the court to clarify its ruling, but rather requests permission to submit a supplemental affidavit indicating the specific page numbers for citations to Dr. Huibregtse's deposition testimony in plaintiff's response brief on summary judgment.  I must deny this motion because this court's rules for submitting evidence in response to a motion for summary judgment require that plaintiff rely on facts included in plaintiff's proposed findings of fact or a response to defendants' proposed findings of fact.  Even if I granted plaintiff's motion, I would not consider facts contained only in a brief or a supplemental

---

other claims against the defendants: (1) plaintiff fell in his cell at the Milwaukee Secure Detention Facility, complained of additional lower back pain, but was not seen in the Health Services Unit until three weeks later; and (2) defendant Cox was deliberately indifferent to plaintiff when he abruptly discontinued plaintiff's prescription to Baclofen, a muscle relaxant, rather than weaning plaintiff off this medication.  Because plaintiff was not granted leave to proceed on these claims, I will not consider them.

affidavit.  Therefore plaintiff's motion will be denied.


## II. DEFENDANTS' MOTION TO STRIKE EXPERTS

Defendants have filed a motion to strike the experts plaintiff has disclosed.  This court's preliminary pretrial conference order stated the following:

> **Disclosure of Experts:**     **Plaintiff:  April 18, 2008**
>                                **Defendants:  May 16, 2008**

> All disclosures mandated by this paragraph must comply with the requirements of Rule 26(a)(2)(A), (B) and (C)).  There shall be no third round of rebuttal expert reports.  Supplementation pursuant to Rule 26(e)(1) is limited to matters raised in an expert's first report, must be in writing and must be served not later than five calendar days before the expert's deposition, or before the general discovery cutoff if no one deposes the expert.  Any employee of a party who will be offering expert opinions during any phase of this case must comply with all of these disclosure requirements.

> Treating physicians and similar treatment providers who will be testifying in that capacity and who will not be offering expert opinions beyond the scope of their treatment must be listed as experts according to the schedule set forth above, but they need not prepare a written report.

> Failure to comply with these deadlines and procedures could result in the court striking the testimony of a party's experts pursuant to Rule 37.  The parties may modify these deadlines and procedures only by unanimous agreement or by court order.

On April 18, 2008, plaintiff filed his disclosure of experts.  The disclosure stated in relevant part:

1. Treating physicians on behalf of plaintiff Mark Rahoi who include Steven I. Grindel and William Waring.  . . .  Attached are affidavits of Dr. Grindel and Dr. Waring that supplement their treating records.

2. Peter M. Ihle . . . .  Dr. Ihle is a retained expert.

3. Additional treating physicians may be named. Timely disclosure will be made to the defense.

In the event substantial employment restrictions amicable to the lack of care by defendants are assigned by Dr. Ihle giving rise to an impairment of earning capacity claim, an expert in that area will be named as well. Preliminarily, that individual is Mr. Ken Ogren . . . or Mr. Jeb Kaiser.

In addition, on June 30, 2008, plaintiff filed an untimely amended disclosure of experts, including all the experts previously disclosed, as well as Dr. Troy Berg and Dr. Nathan Rudin.

Defendants move to strike Dr. Ihle, Ogren, Kaiser, Dr. Berg and Dr. Rudin from testifying altogether and bar Dr. Grindel and Dr. Waring from presenting expert testimony. Defendants argue that plaintiff has not met the requirements of Fed. R. Civ. P. 26(a)(2)(B) that a party disclosing experts accompany such disclosure with a written report containing (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the data or other information considered by the witness in forming them; (3) any exhibits that will be used to summarize or support the opinions; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous four years, the witness testified as an expert

4

at trial or by deposition; and (6) a statement of the compensation to be paid for the expert's work in the case.  Plaintiff has not provided reports for any of the experts listed in his disclosures.

### A. Dr. Ihle

Plaintiff states he is not going to call Dr. Ihle; therefore I will grant the motion to strike regarding him.

### B. Dr. Waring and Dr. Grindel

Dr. Waring and Dr. Grindel are treating doctors.  Defendants do not object to their testifying regarding the treatment they provided, but move to bar them from presenting expert testimony.   Defendants argue that plaintiff has not complied with the pretrial conference order and Rule 26(a)(2)(B) for experts offering opinions beyond the scope of their treatment.  Plaintiff does not argue he has complied with the pretrial conference order, but instead argues because plaintiff was to undergo rotator cuff surgery with Dr. Grindel on July 22, 2008, neither he nor Dr. Waring would be able to foresee the outcome of the surgery, and thus the Rule 26 requirements "[do] not fit this case."  He further argues that because defense counsel will have the opportunity to see the doctors' deposition testimony, no surprise will occur.  I conclude that any testimony Dr. Waring and Dr. Grindel might

5

offer outside the scope of their treatment of plaintiff must be barred. First, it seems likely that Dr. Waring and Dr. Grindel would be asked to testify as experts about the standard of care for a torn rotator cuff and how plaintiff's treatment in prison related to that care. Conclusory testimony of this nature was presented early in the litigation, when the summary judgment process was stayed on November 8, 2007, in response to affidavits received from these doctors.[2] Yet even after the summary judgment process was delayed approximately nine months, giving plaintiff an opportunity to provide expert reports in compliance with Rule 26(a)(2)(B), he has failed to provide them. Second, plaintiff's arguments regarding both doctors' testimony on plaintiff's health following rotator cuff surgery may have been persuasive in a timely motion to amend the pretrial conference order, but such arguments are improper at this point in the proceedings. With the September 29, 2008 trial date looming, any expert disclosures at this point would hinder defendants' preparation. Plaintiff did meet the order's requirements for calling these doctors as treating physicians, so that testimony is not barred.

---

[2] In my November 8, 2007 order I stated those affidavits "suggest[ed] that the underlying facts of this case may be quite different from the facts presented by defendants in their motion for summary judgment . . . and that the court has relied upon in reaching prior decisions," and I ordered the summary judgment process stayed and a status conference to be scheduled, at which time the new deadlines of April 18, 2008, for plaintiff's expert disclosures and May 30, 2008, for dispositive motions were given.

### C. Ogren and Kaiser

As noted earlier, in plaintiff's April 18, 2008 disclosure, he states:

> In the event substantial employment restrictions amicable to the lack of care by defendants are assigned by Dr. Ihle giving rise to an impairment of earning capacity claim, an expert in that area will be named as well. Preliminarily, that individual is Mr. Ken Ogren . . . or Mr. Jeb Kaiser.

Despite the fact that plaintiff concedes that Dr. Ihle will not be testifying, plaintiff argues that because "[at the time of this briefing] it is premature to know if there is an impairment of earning capacity claim in this case" because the rotator cuff surgery was scheduled for a date after the deadline for expert witness disclosures, "[t]he state should not be the beneficiary of an argument that a FRCP 26(a) report was not filed . . . when it did nothing to provide care to [plaintiff] during his incarceration," and that plaintiff's counsel has given timely notice of this issue.

For reasons similar to those stated above for Dr. Waring and Dr. Grindel, expert testimony from Ogren and Kaiser must be barred. As with Dr. Waring and Dr. Grindel, plaintiff's major argument is that he could not comply with the pretrial conference order because surgery was scheduled after the disclosure deadline. But again, this is an issue that should have been raised earlier, not after plaintiff failed to meet the requirements of the pretrial conference order. With trial scheduled for September 29, 2008, any expert disclosures at this point would hinder defendants' preparation, regardless of earlier notice

7

that these experts may provide testimony at some later date.  The relevant issues are the rapidly approaching trial date and whether plaintiff complied with the clear requirements of the pretrial conference order.  Because plaintiff did not, I must grant defendants' motion regarding proposed experts Ogren and Kaiser.

### D. <u>Dr. Rudin and Dr. Berg</u>

Finally, defendants move to strike Dr. Rudin and Dr. Berg, two treating doctors named by plaintiff on June 30, 2008, more than two months after plaintiff's April 18, 2008 deadline.  Defendants argue that these doctors should not be allowed to give expert testimony because they were not named as experts by the expert witness disclosure deadline. Plaintiff argues that his counsel was not aware of these experts' names until after the deadline.  However, defendants point out that Dr. Rudin's name appears on an initial witness list filed by plaintiff in July 2007, before plaintiff had obtained counsel and before the pretrial conference order was entered.  I conclude that plaintiff's failure to name Dr. Rudin as a witness earlier is harmless because the proposed findings of fact submitted by defendants contain a detailed recitation of plaintiff's two visits with Dr. Rudin, and thus there should be no unfair surprise to defendants by having Dr. Rudin testify.  However, he may testify only as a treating physician, as plaintiff did not file the necessary expert reports by the deadline.

8

Regarding Dr. Berg, plaintiff argues that before June 18, 2008, he did not know Dr. Berg's name and was unable to obtain the report of Dr. Berg. Defendants argue that plaintiff's counsel should have been aware of Dr. Berg because plaintiff himself was examined by Dr. Berg approximately two months before the expert witness disclosure deadline. They argue further that plaintiff should have been aware of Dr. Berg's name because it is contained in plaintiff's medical records. However, plaintiff counsel's avers that he was not able to obtain Dr. Berg's report until June 18, 2008, and defendants do not cite to any place in the record where Dr. Berg's name or report is located. Plaintiff's counsel has submitted Dr. Berg's treatment report with his affidavit and as a treating physician, he is not required to submit an expert's report under Rule 26(a)(2)(B). Thus defendants will suffer no prejudice if I allow Dr. Berg to testify. Therefore I will deny defendant's motion to strike Dr. Berg's testimony, although as with Drs. Waring, Grindel and Rudin, Dr. Berg may not present testimony outside the scope of his treatment of plaintiff.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The undisputed facts set forth below are taken from defendants' proposed findings of fact and plaintiff's response from the defendants' original motion for summary judgment, which I stayed on November 8, 2007. Since that time plaintiff has obtained counsel. Counsel has submitted neither a new response to defendants' proposed findings of fact nor

9

a document containing plaintiff's own proposed findings of fact, but instead cites in plaintiff's brief to various affidavits containing additional facts in support of his arguments. The requirements for properly opposing a motion for summary judgment are set forth in this court's <u>Procedure to be Followed on Motions for Summary Judgment</u>, which plaintiff received with the Preliminary Pretrial Conference Order, dkt. #58 (January 24, 2008). Because this court requires proposed facts to be included in either plaintiff's response to defendants' proposed findings of fact or in the plaintiff's own proposed findings of fact, I will not consider the additional facts in plaintiff's brief that are not included in defendants' proposed findings of fact or plaintiff's response.


### A. <u>Undisputed Facts</u>

1. <u>Background</u>

Plaintiff Mark Rahoi has suffered medical problems relating to serious injuries suffered in a motor vehicle accident on July 17, 2005, including a C4-C5 incomplete spinal cord injury. He has also suffered from frequent and severe headaches, paralysis/numbness, chronic back problems, muscle, bone and joint problems, frequent constipation/diarrhea, rapid weight loss, constant fatigue, and difficulty in movement. During the time relevant to this lawsuit, plaintiff was confined at the following correctional institutions: (1) Milwaukee Secure Detention Facility from December 15, 2005, until March 24, 2006; (2)

Redgranite Correctional Institution from April 14, 2006, until October 11, 2006, and (3) Prairie du Chien Correctional Institution from October 25, 2006, until July 25, 2007. Plaintiff is now out of prison.  Dr. Kerim Sirin was employed as a physician at the Milwaukee Secure Detention Facility while plaintiff was confined there, Dr. Charles Huibregtse was employed as a physician at the Redgranite Correctional Institution while plaintiff was confined there, and Dr. Burton Cox was employed as a physician at the Prairie du Chien Correctional Institution while plaintiff was confined there.

2.  Dr. Sirin

        In preparation for plaintiff's entry into the Milwaukee Secure Detention Facility, a Health Transfer Summary was completed on December 14, 2005.  Nothing on this form indicates that plaintiff suffered a rotator cuff tear or that he needed physical therapy for complications from his spinal cord injuries.  Plaintiff was received at the Milwaukee Secure Detention Facility on December 15, 2005.  An intake screening was completed and instructions on obtaining health services were provided to plaintiff.  The medical intake form reflects that plaintiff complained of numerous problems, including pain from a vertebrae fracture with spinal cord injury.  The form states that plaintiff had been scheduled to have surgery on December 14, 2005, but it does not indicate the purpose of the surgery. Someone at the Milwaukee Secure Detention Facility also faxed a "Release of Information"

11

to Froedtert Hospital and received plaintiff's records on December 15, 2005. The records were dated July 17, 2005. Also on December 15, 2005, defendant Sirin reviewed these records and noted plaintiff's injuries and the medications he was receiving. He noted also that there was no follow-up record indicating scheduled appointments or surgery. He prescribed plaintiff a painkiller, muscle relaxant, anticonvulsant and antidepressant, and issued him a wheelchair and low bunk and first floor restrictions.

Defendant Sirin met with plaintiff on December 16, 2005. The "Problem List" dated December 16, 2005, showed that plaintiff had a traumatic spinal cord injury and right shoulder pain. Defendant Sirin prescribed plaintiff laxatives, another muscle relaxant and more painkillers. At a follow-up appointment on December 27, 2005, defendant Sirin did not examine plaintiff. At that time, plaintiff complained of right shoulder and back pain. Defendant Sirin noted that plaintiff was on pain medications and he continued the medications. Defendant Sirin next met with plaintiff on February 16, 2006, when plaintiff complained of right shoulder pain and stated he had previously gotten an MRI indicating a rotator cuff tear. In addition, plaintiff provided defendant Sirin with a letter purporting to be from Dr. William Waring, M.D., Rehabilitation Director Spine Unit, Froedtert Hospital. The letter was dated January 18, 2006. It was not written on letterhead and was not signed by Dr. Waring. The letter stated in relevant part:

12

Mr. Mark Rahoi is [sic] a patient of mine since July, 2005.  He is a 41 year old male who was in a motor vehicle accident July of last year.  ....  He had quite a bit of recovery and was discharged from the hospital on September 6.  At that time he still had weakness and was developing spasticity of his body.  Spasticity is a common complication of spinal cord injuries which results in abnormal stiffness and movement of muscles and is a major risk factor for the development of contractures (abnormal shortening of muscles).

Mr. Rahoi participated in outpatient rehabilitation therapy after his discharge. he [sic] attended all of his therapies and follow up appointments with his physicians. ...

He complained of right shoulder pain.  A magnetic resonance imaging scan (MRI) revealed a rotator cuff tear.  This appeared to be an acute tear consistent with the trauma he suffered in July.  He was referred to Dr. Grindel in our Orthopedic Department.  He was scheduled to have his shoulder repaired on December 14.  We also had Mr. Rahoi scheduled to received [sic] Botox injections in his right shoulder preoperatively to decrease the spasticity.  Decreasing his spasticity would have promoted healing after the surgery.  This surgery has been cancelled because it is our understanding Mr. Rahoi is currently incarcerated.

My last visit with Mr. Rahoi was on November 11.  At that time he was still exhibiting spasticity, worse on the right side, weakness, worse in his right arm, slowness of movement and a slow deliberate gait.

It is imperative that Mr. Rahoi get rescheduled for his shoulder surgery and preoperative injections.  He is close to the point where surgery is contraindicated because after a few months the torn rotator cuff muscles will atrophy and shrink where surgical repair is impossible.  Not to fix his shoulder will increase his risks for ongoing pain problems and shoulder weakness.

His incarceration would not permit him to participate in the intense physical therapy he will need on shoulder [sic] for up to 3-6 months after the surgery.  He also is losing the ability to see his other rehabilitation therapists who would be working with him to maximize his recovery and prevent complications such as contractures.

13

Because plaintiff told defendant Sirin at the February 16, 2006 appointment that he had gotten an MRI indicating a rotator cuff tear, defendant Sirin completed an Authorization for Use and Disclosure of Protected Health Information form addressed to Dr. William Waring.  Plaintiff signed this form and it was forwarded to Dr. Waring, but defendant Sirin never received records from Dr. Waring.  Defendant Sirin also noted that Waring's letter stated that surgical repair of the rotator cuff would be impossible after a few months. Defendant Sirin increased plaintiff's Percocet for pain relief.  Plaintiff left the Milwaukee Secure Detention Facility on March 24, 2006.

3. <u>Dr. Huibregtse</u>

a. Rotator cuff surgery

Plaintiff arrived at the Redgranite Correctional Institution on April 15, 2006.[3] Defendant Huibregtse met with plaintiff or reviewed pertinent information in his chart on several occasions, including May 1, 2006, June 19, 2006, July 19, 2006, and September 6, 2006.  On April 15, 2006, a Medical Restrictions/Special Needs form was completed, allowing plaintiff to have an extra pillow, an extra blanket and low bunk and first floor cell

---

[3] No explanation is given in defendants' proposed findings of fact for the differing dates of April 14, 2006, and April 15, 2006, for plaintiff's arrival at the Redgranite Correctional Institution, but this discrepancy is immaterial.

restrictions.  He was prescribed an egg crate mattress later.  Defendant Huibregtse met with plaintiff on May 1, 2006.  Plaintiff complained of numbness of his extremities and low back pain.  Plaintiff also had lower extremity pain and spasms.  Initially, defendant Huibregtse prescribed muscle relaxants and on May 6, 2006, prescribed an anticonvulsant/painkiller. Throughout plaintiff's stay at the Redgranite Correctional Institution, defendant Huibregtse frequently changed the type and dosage of medications, often in response to plaintiff's complaints.  At some point, defendant Huibregtse saw the letter from Dr. Waring and concluded that the possibility of rotator cuff surgery was moot given the "few months" window for repair after the injury.  It was defendant Huibregtse's understanding that plaintiff was given this same information by both defendant Sirin and plaintiff's physician at the Dodge Correctional Institution, where plaintiff was incarcerated for a short time after he was at the Milwaukee Secure Detention Facility and before he went to the Redgranite Correctional Institution.

b. Physical therapy

        After defendant Huibregtse met with plaintiff on May 1, 2006, he completed a referral to physical therapy, requesting four to six visits for evaluation and treatment of upper extremity spasticity and incoordination.  Plaintiff attended physical therapy four times while at the Redgranite Correctional Institution:  June 12, June 29, July 6 and August 14,

2006.  In addition, plaintiff was allowed to exercise in the physical therapy room in the Health Services Unit two times a week from June 15 to October 1, 2006.  The physical therapist was present only on the dates plaintiff attended physical therapy.  When plaintiff exercised in the physical therapy room in the Health Services Unit, he performed an independent program without a physical therapist present.

c. Medication

The Redgranite Correctional Institution has the following medications policy: controlled medications are generally distributed four times daily:  morning, noon, evening and bedtime.  An announcement is made over the public address system by the sergeant summoning general population inmates to the Health Services Unit for prescribed medication delivery by unit ten minutes before the actual delivery time.  Some medication orders may require modifications to the scheduled times or frequency or both.  Staff will observe inmates while they take their medication and will tell the inmate to open his mouth following consumption.  Medication must be taken with a state-issued cup with water.  The empty cup must be shown to staff after the inmate has swallowed the medication.  Inmates are responsible for ordering their own medication refills.  All inmates are expected to bring concerns about their medication to the attention of the health services staff.   Inmates must request the reorder label from the staff member distributing the medication when there are

16

approximately four days of the current prescription remaining.  Inmates must then review the reorder form to ensure that the appropriate inmate name and medication is listed and submit the form into the red medical box located at the Health Services Unit or attach the form to a health service request and submit it to the Health Services Unit through the mail.  All inmates must be aware of the prescription expiration on all controlled medications. Inmates must notify the Health Services Unit when they are less than a month from the prescription expiration date if they believe the medication must be renewed.

While plaintiff was incarcerated at the Redgranite Correctional Institution, he had no control over his controlled medications, which were administered and handled by staff. Most of the time the staff did not let plaintiff know that he had to reorder a medication until he was down to his last couple of pills.  Staff never told him an expiration date until it was too late.  Defendant Huibregtse had no knowledge of the difficulties plaintiff had regarding orders for medication not being carried out.

4. Dr. Cox

a. Rotator cuff surgery

Plaintiff arrived at the Prairie du Chien Correctional Institution on October 25, 2006. Intake was completed on that day and showed that plaintiff's physical complaints included back, neck and hand.  There was no mention of needing a rotator cuff repair.  Defendant

17

Cox met with plaintiff or reviewed pertinent information in his chart on a number of occasions, including November 1, 2006, November 21, 2006, January 31, 2007, and April 13, 2007.  On November 1, 2006, defendant Cox prescribed various medications for plaintiff, including muscle relaxants, an anti-inflammatory and a stomach acid suppressor. He also issued low bunk and first floor restrictions, an extra pillow and extra time to cross campus, and ordered physical therapy and occupational therapy.  Throughout plaintiff's stay at the Prairie du Chien Correctional Institution, defendant Cox changed dosages and types of medication and issued various restrictions in response to plaintiff's frequent health services requests.  At plaintiff's physical therapy session at the Prairie du Chien Hospital on November 29, 2006, plaintiff reported shoulder pain, tightness and weakness and reported having an MRI taken that revealed a right rotator cuff tear. Plaintiff submitted a health service request dated February 15, 2007, stating the following:

> Dr. Cox as you know my right rotator cuff is torn and I was suppose [sic] to have had surgery done in Dec 05 and I'm going to ask you for medical care on it.  I wish to see a specialist.  It was ignored by Dr. Sirin and Dr. Huibregtse so now I'm asking you to help me get it fixed. I want an MRI and surgery.  I still have the back and neck pain along with shoulder [sic] and the medication ain't helping. I also don't have the range of movement I'm suppose [sic] to have.  So please stop denying and ignoring it.  The longer you wait to fix it, the less chance I have of it ever being the same!  This is a on going [sic] problem!

Plaintiff submitted a health service request dated February 19, 2007, complaining that his right rotator cuff was torn and that it was "bothering" him.  Plaintiff complained that it was

18

the weakest part of his body and "inhibiting" his total recovery. Plaintiff stated that his occupational therapist thought he should have an MRI and a referral to a specialist to see whether it could still be fixed. On February 20, 2007, defendant Cox responded to plaintiff's request, stating, "Too long since injury to rotator cuff for surgery now. Cont[inue] PT/OT." In addition, at some point, defendant Cox reviewed the letter purportedly from Dr. Waring. Defendant Cox's opinion at the time he reviewed the letter was that too much time had passed since the letter was written to pursue rotator cuff surgery.

b. Physical therapy

On November 1, 2006, about a week after plaintiff arrived at Prairie du Chien Correctional Institution, defendant Cox saw plaintiff at the institution's Health Services Unit. Defendant Cox ordered and e-filed a request for physical therapy and occupational therapy on November 3, 2006, and this request was approved November 8, 2006, by Dr. David Burnett, the Medical Director of the Bureau of Health Services. Plaintiff had five physical therapy sessions while at Prairie du Chien Correctional Institution: December 12, December 14, December 21, December 26 and December 28, 2006. Also, defendant Cox ordered an elastic exercise band, hand exerciser ball and hand strengthening putty for plaintiff as recommended by the physical therapist for a home exercise program.

19

c. Medication

The Prairie du Chien Correctional Institution has the following medications policy: it is the offender's responsibility to request a medication refill.  According to the Inmate Handbook at the Prairie du Chien Correctional Institution, refill requests are to be submitted 5-7 days before an inmate will run out of a medication.  This gives Health Services time to reorder the medication from the pharmacy.  However, when inmates arrive at the institution they are provided with an orientation tool titled "Inmate Responsibilities with Medications" that conflicts with the 5-7 day refill rule.  This orientation tool is delivered to inmates as they are admitted to the institution.  At one time, the inmates were instructed to order their medications 10 days early because of the time it took for the Central Pharmacy to deliver medications.  The turnaround time has decreased over the years; thus when Prairie du Chien Correctional Institution wrote its Medication Delivery Policy, inmates were instructed to reorder medication 5-7 days before it ran out. The institution's Health Services Unit Manager ordered that the days on the orientation sheet be changed to match the days on the Medication Delivery Policy.  The Health Services Unit does not fill medication requests on weekends or holidays.  When an inmate arrives at the institution, any medication that was transferred with the inmate's property is sent to the Health Services Unit.  The Health Services Unit delivers all controlled medication to the housing units and segregation, where trained correctional officers dispense the medication.  If an inmate has

20

questions or problems with the medicine, he is to submit a health service request or notify his unit correctional officer.

While plaintiff was incarcerated at the Prairie du Chien Correctional Institution, he had no control over his controlled medications, which were administered and handled by staff.  Most of the time the staff did not let plaintiff know that he had to reorder a medication until he was down to his last couple of pills.  Staff never told him an expiration date until it was too late.  Defendant Cox had no knowledge of the difficulties plaintiff had regarding orders for medication not being carried out.


## B.  Disputed Facts

### 1. Dr. Sirin

The parties dispute whether defendant Sirin performed a physical examination of plaintiff at their meetings on December 16, 2005, and February 16, 2006.  In addition the parties dispute whether, at the December 16, 2005 meeting, plaintiff told defendant Sirin about his shoulder pain and the need for surgery on his torn rotator cuff, as well as the need for physical therapy, and whether defendant Sirin told him that he "would not get that kind of treatment" at the Milwaukee Secure Detention Facility.


### 2. Dr. Huibregtse

The parties dispute whether defendant examined plaintiff specifically for shoulder or back pain at their May 1, 2006 meeting and whether plaintiff brought up the issue of his shoulder injury and the need for surgery with defendant Huibregtse at that meeting.  The parties also dispute whether defendant Huibregtse examined plaintiff on July 19, 2006.

3. Dr. Cox

The parties dispute whether defendant Cox ever examined plaintiff and whether plaintiff brought up the issue of his shoulder injury and the need for surgery with defendant Cox at their November 1, 2006 meeting.

C. Opinion

1. Background

Plaintiff's claim that defendants denied him adequate medical care arises under the Eighth Amendment, which prohibits cruel and unusual punishment.  Under the Eighth Amendment, a prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person.

22

Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006).  A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994).

"Deliberate indifference" means that prison officials know of and disregard an excessive risk to inmate health and safety.  Farmer, 511 U.S. at 837.  Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes v. DeTella, 95 F.3d 586, 590-91 (7th Cir. 1996).  Thus, disagreement with a doctor's medical judgment, incorrect diagnosis or improper treatment resulting from negligence is insufficient to state an Eighth Amendment claim.  Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997); Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1996).  Instead, "deliberate indifference may be inferred [from] a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole, 94 F.3d at 261-62.

Under these standards, therefore, plaintiff's claims have three elements:

(1) Did plaintiff need medical treatment?

(2) Did defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

Because plaintiff has the burden to prove his case at trial, it is his burden at the summary judgment stage to come forward with enough evidence on each of these elements to allow a reasonable jury to find in his favor.  Borello v. Allison, 446 F.3d 742, 748 (7th Cir. 2006); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  Defendants concede that plaintiff's back, neck and shoulder injuries constitute serious medical needs, but plaintiff must still come forward with enough evidence of deliberate indifference to allow a reasonable jury to find in his favor.


2. Rotator cuff surgery

a. Dr. Sirin

Drawing all inferences in a light most favorable to plaintiff, I conclude there are disputed issues of material fact making summary judgment inappropriate on the claim against defendant Sirin regarding rotator cuff surgery.  Plaintiff has proposed sufficient facts from which a reasonable jury could infer that defendant Sirin was deliberately indifferent to his shoulder condition.  A jury could infer that defendant Sirin was aware of the serious

24

medical need on December 16, 2005 from (1) the intake screening form stating plaintiff was scheduled to have surgery and (2) plaintiff's statement at their initial meeting the next day that he needed surgery. Defendant Sirin maintains that he was not aware of plaintiff's need for surgery because the Froedtert Hospital medical records examined by defendant Sirin on December 15, 2005, did not show plaintiff as scheduled for surgery. However, plaintiff contends that he told defendant Sirin about his need for surgery on December 16, 2005, and yet Sirin did nothing in response to this information. In addition, plaintiff alleges that defendant Sirin stated that plaintiff would not get that kind of treatment at the Milwaukee Secure Detention Facility. From these disputed facts, particularly the disputed fact whether defendant Sirin summarily dismissed plaintiff's concerns, it could be inferred that defendant Sirin either knew of the need for surgery or declined to confirm suggestions of risk that he strongly suspected. Farmer, 511 U.S. at 843 n.8. ("[Prison official] would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.")

Defendant Sirin argues that "there is no support in the law for the proposition that a physician must provide every treatment that a patient requests, and there is substantial undisputed evidence in the record that [defendant Sirin] treated [plaintiff's] pain by providing him with pain control medication and providing other accommodations to

25

minimize his suffering." Dft.'s Reply Br., dkt. # 98, at 2. Although the record shows that defendant Sirin provided plaintiff with pain medication and other accommodations such as lower bunk and first floor restrictions as early as December 16, 2005, this shows at best that defendant Sirin did not ignore plaintiff's shoulder pain altogether. However, deliberate indifference may be inferred [from] a medical professional's erroneous treatment decision [] when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole, 94 F.3d at 261-62. It is a question for the jury whether the accommodations made in this case were such a substantial departure from accepted professional judgment as to amount to deliberate indifference. Sherrod v. Lingle, 223 F.3d 605, 611-12 (7th Cir. 2000) ("If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not 'simply ignored.'")

Defendant Sirin also argues that once he received the letter from Dr. Waring on February 18, 2008, it would have been reasonable for him to conclude at that point that the window for surgery was closed. In his view, it was reasonable to read the letter as stating that surgery was required within "a few months" of the July 17, 2005 accident. Had defendant Sirin concluded that the window for surgery was closed, a strong argument could

be made that Sirin's inaction was a "classic example of a matter for medical judgment" not giving rise to deliberate indifference. <u>Estelle</u>, 429 U.S. at 107. However, in the present case the record permits the inference that defendant Sirin did not actually make the decision to forgo surgery because of the letter. Although defendant Sirin "noted that Dr. Waring's letter stated surgical repair of the rotator cuff is impossible after a few months," Sirin does not state he made the decision not to pursue surgery because of the letter's warning. Instead, the undisputed fact is that he requested medical records from Dr. Waring, which suggests he did not consider the matter closed. Moreover, nothing in the summary judgment record shows that defendant Sirin did anything to follow up on that request. It is up to the jury to determine whether defendant Sirin's actions constituted deliberate indifference. Therefore I will deny defendant's motion for summary judgment on the rotator cuff surgery claim regarding defendant Sirin.

b. Dr. Huibregtse

Defendant Huibregtse argues that summary judgment should be granted on plaintiff's claim against him of deliberate indifference regarding rotator cuff surgery for two reasons: (1) plaintiff never raised the issue of surgical repair of the rotator cuff with him; and (2) defendant Huibregtse reviewed the Waring letter and concluded that the issue of surgery was moot because more than a few months had passed since the injury. However, there are

disputed issues of material fact on both points, making summary judgment inappropriate. It is disputed whether plaintiff brought up his shoulder injury and need for surgery at his May 1, 2006 meeting with defendant Huibregtse, thus allowing the inference that Huibregtse was aware of plaintiff's serious medical needs.  Regarding the Waring letter, defendant Huibregtse does not say when he saw that letter.  Without knowing whether defendant Huibregtse reviewed this letter during the period he treated plaintiff, I cannot conclude that defendant Huibregtse made a medical judgment not to pursue surgery at some point during his treatment of plaintiff.  As with defendant Sirin, a jury could conclude that defendant Huibregtse was aware of plaintiff's shoulder injury and the need for surgery, and yet did nothing to arrange for surgery to take place, to investigate the injury further or to make a medical judgment that surgery was inappropriate.  Defendant Huibregtse argues that he treated plaintiff with pain medication, muscle relaxants and other accommodations such as an extra pillow and blanket, an egg crate mattress, and low bunk and first floor cell restrictions, but, as with defendant Sirin's treatment, it is a question for the jury whether the accommodations made in this case fell so short of what plaintiff needed as to amount to deliberate indifference.  Sherrod, 223 F.3d at 611-12.  Therefore I must deny defendant's motion for summary judgment on the rotator cuff surgery claim regarding defendant Huibregtse.

28

c. Dr. Cox

As with defendant Huibregtse, defendant Cox argues that he could not have been deliberately indifferent to plaintiff's need for rotator cuff surgery because he reviewed the letter from Dr. Waring and made a medical judgment that it was too late to have surgery. However, as with defendant Huibregtse, defendants do not disclose when defendant Cox reviewed the letter. Given other facts in the record regarding plaintiff's time at the Prairie du Chien Correctional Institution, a reasonable inference could be drawn that defendant Cox did not review this letter until approximately February 20, 2007. There were numerous occasions before February 20, 2007, on which defendant Cox could have investigated the matter, but there is no record of him doing so. For instance, the parties dispute whether plaintiff mentioned needing rotator cuff repair at their first meeting on November 1, 2006. For the purpose of summary judgment, I will credit plaintiff's assertion that he did inform defendant Cox of the need for surgery at that time. Nothing in the record indicates that defendant Cox explained his medical judgment to plaintiff at that time. Thus, reasonable inferences from the facts are that defendant Cox was aware of plaintiff's need for surgery on November 1, 2006, and did nothing to investigate the matter until February 20, 2007. At that point it is undisputed that defendant Cox made a medical judgment that surgery was too late for plaintiff. Therefore, plaintiff has no claim for deliberate indifference against defendant Cox after that date. Gutierrez v. Peters, 111 F.3d at 1374 (disagreement with

29

doctor's medical judgment insufficient to state Eighth Amendment claim).   In sum, defendants' motion for summary judgment on behalf of defendant Cox must be denied in part because there are disputed issues of material fact regarding plaintiff's claim that defendant Cox knew about plaintiff's need for surgery as early as November 1, 2006 and then ignored the matter until February 20, 2007.   The motion for summary judgment will be granted regarding defendant Cox's actions on or after February 20, 2007.

3. <u>Physical therapy</u>

a. Dr. Sirin

Plaintiff's argument with respect to defendant Sirin is essentially the same regarding physical therapy as for rotator cuff surgery.   Plaintiff states that defendant Sirin never examined him even though plaintiff told him he needed physical therapy.   Nothing in the record indicates that plaintiff received physical therapy while he was confined at the Milwaukee Secure Detention Facility.   Moreover, it is disputed whether defendant Sirin told plaintiff at their December 16, 2005 meeting that he would not get physical therapy while detained there.   A jury could reasonably infer that plaintiff did not receive physical therapy despite the fact that defendant Sirin knew of and disregarded a serious risk to plaintiff's health.   Therefore I will deny defendants' motion for summary judgment on this issue regarding defendant Sirin.

30

b. Dr. Huibregtse

Regarding the physical therapy claim against defendant Huibregtse, plaintiff concedes that he had four sessions with a physical therapist and was allowed to exercise in the Health Services Unit physical therapy room two times a week while he was incarcerated at the Redgranite Correctional Institution under the care of defendant Huibregtse. Despite this concession, plaintiff argues that this treatment was inadequate. Plaintiff points out that he had no appointments with a physical therapist between July 6 and August 14, 2006 or between August 14 and October 1, 2006 while he was at the Redgranite Correctional Institution and argues that "[t]he real benefit of physical therapy for someone in [plaintiff's] condition is not felt unless the physical therapy sessions are held regularly with short time periods in between sessions." Pl.'s Br., dkt. # 90, at 16. Plaintiff suggests that although he was allowed to go to the Health Services Unit physical therapy room two times a week to work out on his own, he should have received the attention of physical therapists during that time.

In contrast to defendant Sirin, who plaintiff argues simply ignored his request for physical therapy, it is undisputed that defendant Huibregtse prescribed treatment for plaintiff. Plaintiff's various arguments regarding the level and type of care amount to a request that this court review a medical judgment made by defendant Huibregtse, but such judgments are questions of medical malpractice suitable in actions under state law, not

31

arising to unconstitutional deliberate indifference. <u>Estelle</u>, 429 U.S. at 107. Therefore I will grant defendants' motion for summary judgment on this issue regarding defendant Huibregtse.

c. Dr. Cox

Regarding the physical therapy claim against defendant Cox, plaintiff concedes he attended five physical therapy sessions while he was incarcerated at Prairie du Chien Correctional Institution under the care of defendant Cox. It is also undisputed that plaintiff was prescribed a home exercise program for which defendant Cox prescribed various equipment. As with defendant Huibregtse, plaintiff's disagreements with defendant Cox's treatment do not state a claim of deliberate indifference. Therefore I will grant defendants' motion for summary judgment on this issue regarding defendant Cox.

4. <u>Medication</u>

Finally, plaintiff argues that although defendants might be accurately stating the medication policies of the Redgranite and Prairie du Chien correctional institutions, his experiences do not match the policies. He states that inmates did not handle their controlled medications and most of the time, depending on the officer, the institutions did not let inmates know when they were low on medication until they were down to one or two pills.

Also, staff never told inmates the prescription expiration date until it was too late. As a result, plaintiff went for prolonged periods of time without his prescribed medications.

In their brief, defendants concede that plaintiff appeared to have difficulty in obtaining medication. However, they point out that Dr. Huibregtse and Dr. Cox have stated they had no knowledge of the difficulties plaintiff was having in obtaining his medication. Plaintiff does not dispute this fact, but instead argues "it seems unlikely that a prescribing physician for an inmate with the serious medical conditions of [plaintiff] would not follow up in making sure his medication orders were obeyed by correctional staff" and "the doctor should be responsible to alert staff to follow up on expiration issues regarding inmates' medications." Pl.'s Br., dkt. # 90, at 4-5. These arguments cannot substitute for facts showing the doctors' actual knowledge of plaintiff's problems. Because plaintiff has not adduced any such facts, no reasonable jury could find in his favor on this claim. Therefore I must grant summary judgment for defendants Huibregtse and Cox on this claim.


ORDER


IT IS ORDERED that:

1. Plaintiff Mark Rahoi's motion for clarification is DENIED.

2. The motion to strike experts filed by defendants Dr. Kerim Sirin, Dr. Charles

33

Huibregtse and Dr. Burton Cox is GRANTED IN PART and DENIED IN PART.  Dr. William P. Waring, Dr. Steven I. Grindel, Dr. Nathan Rudin and Dr. Troy Berg may testify in their capacity as treating physicians but are barred from presenting testimony outside the scope of treatment.  Dr. Peter M. Ihle, Ken Ogren and Jeb Kaiser are barred from presenting expert testimony.

3. Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Defendants' motion for summary judgment on the rotator cuff surgery issue is DENIED with respect to defendants Sirin and Huibregtse.  Defendants' motion for summary judgment on the rotator cuff issue with respect to defendant Cox is GRANTED as to any actions taken by defendant Cox on or after February 20, 2007, but DENIED as to any actions taken by defendant Cox before February 20, 2007.  Defendant's motion for summary judgment on the physical therapy issue is GRANTED with respect to defendants Huibregtse and Cox, but DENIED with respect to defendant Sirin.  Defendants' motion for summary judgment on the medication issue is GRANTED with respect to both defendants

Huibregtse and Cox.

Entered this 10th day of September, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge